UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| DAVID K. CHESTER, | ) | |
| Plaintiff, | ) | No. CV-07-412-LRS |
| | ) | **ORDER GRANTING** |
| vs. | ) | **DEFENDANTS' MOTION FOR** |
| CATHERINE BAUM, et al., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants | ) | |

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment
(Ct. Rec. 48). This motion is heard without oral argument.

I.      **INTRODUCTION AND SUMMARY CONCLUSION**

Plaintiff, David K. Chester ("Plaintiff"), an inmate at the Airway Heights
Correctional Center ("AHCC"), filed a civil rights complaint under 42 U.S.C. §
1983 on December 26, 2007.  The named defendants include: Catherine Baum,
Advanced Registered Nurse Practitioner ("ARNP") at Stafford Creek Correctional
Center ("SCCC"); Maggie Miller-Stout, Superintendant at AHCC; Raymond
Bergroos, Health Care Manager II at AHCC; Robert "Rusty" Smith, Health Care
Manager I at AHCC; F. John Smith, M.D., Medical Director at AHCC; John

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1**

Loranger, Physician's Assistant ("PA-C") at AHCC; and John Isles, Licensed

Practical Nurse ("LPN") at AHCC.

Plaintiff, who is proceeding with this action *pro se*, alleges in his complaint

that the Defendants exhibited deliberate indifference to his serious medical needs

in violation of the Eighth Amendment proscription against cruel and unusual

punishment, and that the Defendants conspired to violate his constitutional rights.

Namely, Plaintiff asserts that he suffers from chronic pain in his left foot due to a

bunion, and that the Defendants failed to provide adequate medical care or

appropriate footwear to address the bunion.  Defendants have filed a motion for

summary judgment.  Plaintiff has filed an affidavit in opposition to Defendants'

summary judgment motion.  This Court, having reviewed the briefing of the

parties, concludes that Plaintiff has failed to raise a material issue of fact as to

whether a constitutional violation occurred and therefore,  Defendants' summary

judgment motion should be granted.


II.    **FACTUAL BACKGROUND**

The following facts regarding this claim are undisputed.

Plaintiff was incarcerated at Stafford Creek Correctional Center ("SCCC")

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2**

between July 11, 2005, and March 27, 2006.  On August 11, 2005, Defendant

Baum responded to a written "kite"[1] from Plaintiff, in which he reported pain in his

foot and requested that he be issued insoles.  At that time, ARNP Baum ordered

that the Plaintiff be issued "crosstrainer insoles." Ct. Rec. 58-5, Att. 17.  Plaintiff

did not show up to receive the insoles. *Id.*  On August 17, 2005, ARNP Baum met

with the Plaintiff, apparently for the first time. *Id.*  ARNP Baum issued Plaintiff

cross-trainer insoles, advised him to limit physical activities, and put him on the

clothing list to receive extra-wide, prison-issued "LSI" shoes.  That same day,

August 17, 2005, ARNP Baum also wrote a consultation request for Plaintiff to be

seen by a podiatrist regarding a "left bunion aggrivated [sic] by walking, running,

sports." Ct. Rec. 58-5, Att. 18.

    On August 31, 2005, Dr. M. Aijaz Kurshid reviewed the podiatry

consultation request submitted by ARNP Baum and decided to defer his decision

on the podiatry referral for eight weeks, indicating he would re-evaluate Plaintiff

after he had received his extra-wide shoes.[2]  On September 7, 2005, ARNP Baum

---

[1]  An informal written communication system used by offenders to communicate with corrections staff.

[2]  Dr. Kurshid is not a defendant in this action.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 3**

informed Plaintiff of Dr. Kurshid's decision to defer the podiatry referral and that he had been placed on the list to receive extra-wide LSI shoes. Ct. Rec. 58-5, Att. 20.

On October 6, 2005, Plaintiff requested an appointment with ARNP Baum. Plaintiff's Exhibit List (PEL), Ct. Rec. 67, Att. B, Ex. 12.  ARNP Baum met with Plaintiff on October 7, 2005, issued him 30 tablets of 600 mg ibuprofen and discussed self-care with him. Ct. Rec. 58-5, Att. 20; Ct. Rec. 58-6, Att. 21.  On October 13, 2005, Plaintiff requested another appointment with ARNP Baum. PEL Att. B, Ex. 15.  ARNP Baum met with Plaintiff on October 20, 2005. Ct. Rec. 58-6, Att. 22.  ARNP Baum forwarded a Health Status Report ("HSR") for New Balance shoes to the Health Care Manager for signature. Ct. Rec. 58-6, Att. 23.  On October 21, 2005, the HSR for medically necessary New Balance shoes was issued.

On November 2, 2005, Dr. Kurshid reviewed ARNP Baum's request that Plaintiff be referred to a podiatrist, and deferred the request again for another four weeks because Plaintiff had not yet received the New Balance shoes. Ct. Rec. 58-5, Att. 18; Ct. Rec. 58-8, Att. 31.

On December 10, 2005, Plaintiff requested an appointment with ARNP Baum. PEL Att. B, Ex. 24.  ARNP Baum met with Plaintiff on December 19, 2005.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 4**

Ct. Rec. 58-7, Att. 26.

On January 18, 2006, Dr. Khurshid reviewed ARNP Baum's request for a referral to a podiatrist, and he again deferred the request because Plaintiff had not received his special New Balance shoes. Cr. 58-8, Att. 31.  Dr. Khurshid deferred the request to see how Plaintiff responded to the New Balance shoes.  A note by Dr. Khurshid indicates that the New Balance shoes were issued to Plaintiff on or around that date. *Id.*, Ct. Rec. 53, ¶10.

On March 22, 2006, Dr. Khurshid determined that a referral to a podiatrist for Plaintiff was not medically necessary, and he denied ARNP Baum's request for a podiatry referral. Ct. Rec. 58-5, Att. 18; Ct. Rec. 53, ¶12.

On March 27, 2006, Plaintiff was transferred from SCCC to Airway Heights Correctional Center ("AHCC"), with a temporary stay at Washington Corrections Center. Ct. Rec. 52-2, Att. A.  Nothing in the record indicates Plaintiff had any further interaction with ARNP Baum prior to the filing of this suit.

Plaintiff arrived at AHCC on May 3, 2006. *Id.*  Two weeks later, on May 17, 2006, Defendant Loranger, a Physician's Assistant (PA-C) at AHCC, conducted a review-of-chart visit. Ct. Rec. 58-8, Att. 35.  At that time, PA-C Loranger had x-rays taken of Plaintiff's left foot to confirm his bunion.  Later that day, PA-C

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 5**

Loranger submitted a Consultation Request/Report for an evaluation and fit for orthotics, if appropriate, from Riessens (an orthotics manufacturer). The request was approved by Defendant F. John Smith, MD. Ct. Rec. 58-9, Att. 37.

On May 31, 2006, and July 5, 2006, Plaintiff was seen by PA-C Loranger. Ct. Rec. 58-9, Att. 38. On July 5, 2006, PA-C Loranger prescribed Plaintiff 500 mg APAP (acetaminophen). Ct. Rec. 58-9, Att. 39; Ct. Rec. 58-21, Att. 98. Plaintiff was issued another 20 tablets of 500 mg acetaminophen on August 4, 2006, and 100 tablets of 325 mg acetaminophen on September 12, 2006. Ct. Rec. 58-21, Att. 99-100.

On August 1, 2006, PA-C Loranger referred Plaintiff to Riessens for appropriate footwear. Ct. Rec. 58-9, Att. 40. On September 20, 2006, Plaintiff was seen again by PA-C Loranger, who noted that Plaintiff was having problems getting his shoes from Riessens. PA-C Loranger noted that he intended to follow up with Riessens to get Plaintiff on their schedule, that he intended to consult podiatry for a surgical consult, and he requested wide toe-box shoes for Plaintiff. Ct. Rec. 58-9, Att. 41. On October 13, 2006, Riessens fit Plaintiff with wider extra-depth shoes. Ct. Rec. 58-9, Att. 40.

On September 26, 2006, PA-C Loranger referred Plaintiff for a consultation

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 6**

with a podiatrist.  PA-C Loranger's request was approved on October 10, 2006. Ct. Rec. 58-10, Att. 42.  Plaintiff was seen by James J. Porter, D.P.M., on October 30, 2006.  At that time, Dr. Porter recommended bunion surgery (lapidus bunionectomy/arthrodsis procedure, left foot) for Plaintiff. Ct. Rec. 58-10, Att. 43.

On December 29, 2006, Plaintiff underwent the bunionectomy by Dr. Porter at the Northwest Surgery Center and was then returned to the AHCC infirmary. Ct. Rec. 58-10, Att. 44-45; Ct. Rec. 58-11, Att. 46-47.  Plaintiff was admitted to the AHCC Inpatient Unit (IPU) for three days.  Plaintiff was issued pain relievers while he was in the IPU, including oxycodone (5-10 mg), acetaminophen (1000 mg), and MS Contin (15 mg – morphine).  Ct. Rec. 58-10, Att. 45; Ct. Rec. 58-11, Att. 46-50; Ct. Rec. 58-22, Att. 102. Plaintiff was discharged from the IPU on January 2, 2007, and was issued crutches and a wheelchair for six weeks.  Plaintiff continued to receive oxycodone and acetaminophen through the end of January 2007. Ct. Rec. 58-11, Att. 47-50; Ct. Rec. 58-11, Att. 46-50.

On January 11, 2007, Plaintiff was seen by PA-C Loranger.  PA-C Loranger examined Plaintiff's foot and took an x-ray, and he did not see any malalignment or bony problems.  PA-C Loranger issued a Health Status Report (HSR) to Plaintiff to allow him to go to meals with other wheelchair inmates. Ct. Rec. 58-12,

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7**

Att. 53-55.

On March 15, 2007, Plaintiff was seen by PA-C Loranger.  A new HSR was written on March 15, 2007, to allow Plaintiff to wear the walking boot for three more weeks. Ct. Rec. 58-15, Att. 66-67.

On March 23, 2007, PA-C Loranger noted that Plaintiff had been seen walking around without the walking boot prescribed by Dr. Porter.  When asked about it, Plaintiff said that a strap on the boot was broken, but PA-C Loranger noted that there were multiple straps on the boot.  PA-C Loranger told Plaintiff to come down to medical to receive a replacement strap. Ct. Rec. 58-15, Att. 68.

On April 15, 2007, Plaintiff requested an appointment with PA-C Loranger. PEL Att. H, Ex. 8.  Plaintiff was seen by PA-C Loranger on April 19, 2007, and new insoles and a new HSR were issued at that time. Ct. Rec. 58-16, Att. 71-72.

On April 23, 2007, PA-C Loranger prescribed 120 tablets of 1000 mg Tylenol for Plaintiff. Ct. Rec. 58-16, Att. 73; Ct. Rec. 58-22, Att. 104.  On April 24, 2007, Plaintiff was scheduled for a podiatry evaluation.  That evening at 8:30 PM, Plaintiff declared a "medical emergency" because he had been experiencing foot pain for the past eleven weeks and he could not get the shoes he needed.  A nurse came to the unit, examined Plaintiff's foot, and determined that there was no

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 8**

indication for a medical provider to be called.  The nurse noted that there was no

redness, no swelling, no break in the skin, no drainage, and it was not hot to the

touch.  The nurse placed Plaintiff on the medical call-out for 9:00 AM the next

morning.  The nurse then notified the medical provider of the situation and it was

determined that no treatment was needed that night. Ct. Rec. 58-16, Att. 73-74.

On the next morning, on April 25, 2007, Defendant F. John Smith, MD,

examined Plaintiff's foot and had an x-ray taken of it. The x-ray showed no change

from the January 11, 2007, x-ray and no pathology.  Dr. Smith gave Plaintiff the

acetaminophen that had been dispensed the previous day. Ct. Rec. 58-16, Att. 74-

75.

On June 5, 2007, PA-C Loranger requested a consult with Dr. Porter for

fitting of custom insoles.  PA-C Loranger noted that Plaintiff already had a pair of

over-the-counter insoles and that "Reissens has made several attempts in providing

footwear and insoles to accommodate this patient with no success." Ct. Rec. 58-18,

Att. 82.  On June 11, 2007, Plaintiff was casted for custom orthoses by Dr. Porter.

Ct. Rec. 58-18, Att. 83.  On June 15, 2007, Plaintiff was seen again by PA-C

Loranger.

On August 6, 2007, Plaintiff requested an appointment with PA-C Loranger.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 9**

PEL Att. L, Ex. 20.  Plaintiff was seen by PA-C Loranger on August 8, 2007.  PA-C Loranger wrote Plaintiff an HSR allowing him three months longer in the lower bunk.  Because Plaintiff was given the lower bunk modality, PA-C Loranger denied Plaintiff's request to remove the no-sports modality.  PA-C Loranger gave Plaintiff 60 tablets of 625 mg acetaminophen. Ct. Rec. 58-19, Att. 88; Ct. Rec. 58-22, Att. 106.

On August 8, 2007, PA-C Loranger completed a Consultation Request/Report requesting a consultation with Reissens for shoes to fit Plaintiff's feet. Ct. Rec. 58-19, Att. 89.  On August 15, 2007, the AHCC Care Review Committee (CRC) denied the request for state issue shoes sized to fit each foot and recommended instead that Plaintiff be given Reissens orthotics.  The CRC noted that the additional shoes were not medically necessary, and it noted that Plaintiff could purchase his own recreational footwear.  There were seventeen (17) voting members of the CRC present at the meeting, including two defendants: F. John Smith, MD, and PA-C Loranger. Ct. Rec. 58-19, Att. 90, Ct. Rec. 58-20, Att. 91. On that same day, August 15, 2007, PA-C Loranger requested that Riessens fit the orthotics from Dr. Porter's office to fit Plaintiff's shoes.  The orthotics were trimmed and Plaintiff accepted them on August 17, 2007. Ct. Rec. 58-20, Att. 92.

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10**

On October 18, 2007, Plaintiff requested an appointment with PA-C Loranger. PEL Att. M, Ex. 11.  PA-C Loranger met with Plaintiff on October 23, 2007. Ct. Rec. 58-20, Att. 93.  Plaintiff was seen again by PA-C Loranger on November 29, 2007.  PA-C Loranger noted that he discussed Plaintiff's shoe situation with Defendant Rusty Smith, who normally dealt with Plaintiff's shoe issues.  PA-C Loranger wrote: "I will go ahead and leave it up to the administrators to figure out his shoe issues.  I will continue to take care of his medical issues." Ct. Rec. 58-20, Att. 94.

On March 6, 2008, Plaintiff was seen again by PA-C Loranger.  PA-C Loranger issued Plaintiff a HSR for a lower bunk for one year and gave him Tylenol for the occasional discomfort in his feet. Ct. Rec. 58-20, Att. 95; Ct. Rec. 58-21, Att. 96.

## III.   DISCUSSION

### A.  Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025 (1975).  Summary judgment is appropriate

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 11**

only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).  In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 12**

judgment is required against a party who fails to make a showing sufficient to

establish an essential element of a claim, even if there are genuine factual disputes

regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

### B.  Deliberate Indifference to Medical Needs

The treatment a prisoner receives in prison and the conditions under which

the prisoner is confined are subject to scrutiny under the Eighth Amendment.

*Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993).  Prison officials

must provide prisoners with adequate "food, clothing, shelter, sanitation, medical

care and personal safety." *Toussaint v. McCarthy,* 801 F.2d 1080, 1107 (9th Cir.

1986).  The state must provide medical care to prisoners and detainees because

their confinement has deprived them of the ability to secure medical care for

themselves. *Estelle v. Gamble,* 429 U.S. 97, 103-04, 97 S.Ct. 285 (1976).

In order to state a claim under 42 U.S.C. § 1983 for violation of the Eighth

Amendment based on inadequate medical care, (1) the defendant must be a person

acting under color of state law; and (2) the defendant engaged in "acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle*, 429 U.S. at 106.  To prevail, a plaintiff must show 1) that his medical

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13**

needs were objectively serious; and 2) that defendant prison officials possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321 (1991); *McKinney v. Anderson*, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).  "The existence of any injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."  *Id.* at 1059-60.

Once a plaintiff's serious medical needs and the nature of the defendant's response to those needs have been established, the plaintiff must then show that prison officials responded to the serious medical need with "deliberate indifference." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).  Under the "deliberate indifference" standard, Plaintiff must show Defendants knew of and

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 14**

disregarded an excessive risk to his health and safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). There must be (1) a "purposeful act or failure to act on the part of the defendant" and (2) the denial/failure to act must be harmful. *McGuckin*, 974 F.2d at 1060.

Prison officials demonstrate deliberate indifference when they are aware of a prisoner's condition but "deny, delay, or intentionally interfere with medical treatment." *Jett,* 439 F.3d at 1096 (internal citations omitted). However, the officials' conduct must constitute "unnecessary and wanton infliction of pain" before it violates the Eighth Amendment. *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909 (1976)).

Deliberate indifference is a state of mind more blameworthy than negligence and requires more than ordinary lack of due care for the prisoner's interests or safety. *Farmer,* 511 U.S. at 835. The Supreme Court has refused to apply a solely objective test for deliberate indifference. *Id.* at 837. Instead, the Court has found that a prison official may be held liable under the Eighth Amendment for acting with deliberate indifference only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.*  This indifference to medical needs must be substantial; mere indifference, negligence, or medical malpractice is insufficient to show deliberate indifference. *See Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (*citing Estelle,* 429 U.S. at 105-06); *see also Farmer*, 511 U.S. at 842; *McGuckin*, 974 F.2d at 1059.

Delay in providing medical care may manifest deliberate indifference. *Estelle,* 429 U.S. at 104-105.  However, mere delay in medical treatment, without more, is insufficient to state a claim of deliberate indifference.  A plaintiff must show that the delay caused further injury. *See Hallett v. Morgan*, 296 F.3d 732, 745-6 (9th Cir. 2002); *McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs.,* 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).  Prison medical officials have wide discretion regarding the nature and extent of medical treatment. *Jones v. Johnson* 781 F.2d 769, 771 (9th Cir. 1986); *see also Riley v. Rhay*, 407 F.2d 496, 497 (9th Cir. 1969).

**C.  Section 1983 Claims Against Defendants Baum and Loranger**

Plaintiff claims each of these Defendants, at some time during the relevant period, violated his Eighth Amendment rights by showing deliberate indifference

to his serious medical needs, namely his bunion and associated foot pain.  In their

motion for summary judgment, Defendants argue that Defendants Baum and

Loranger are entitled to summary judgment because there are no material facts in

dispute that support Plaintiff's claim that either Defendant violated his Eighth

Amendment rights.


*1. Serious Medical Needs of Plaintiff*

The Court finds there is a triable issue of fact raised as to whether Plaintiff's

bunion constitutes a "serious medical need."  Based on the evidence before it, a

reasonable jury could conclude that Plaintiff's bunion and accompanying foot pain

constitute "serious medical needs" and therefore, Defendants' motion for summary

judgment cannot be granted on this basis.  *McGuckin*, 974 F.2d at 1059-60.  The

record indicates Plaintiff had sought medical attention for his condition since at

least June 2004, a condition that he was prescribed orthotics for and eventually

underwent surgery to correct.  Therefore, the decision to grant or deny summary

judgment to Defendants Baum and Loranger must turn on whether the record,

when viewed in a light most favorable to the Plaintiff, indicates that Defendant

Baum or Loranger knew of and intentionally disregarded an excessive risk to

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17**

Plaintiff's health and safety that ultimately led to further harm.

### 2. Defendant Baum

The Court finds that no material issue is in dispute as to whether Defendant
Baum was actually aware of and consciously disregarded a substantial risk of
serious harm to the Plaintiff with regard to his foot condition.  ARNP Baum was
aware that Plaintiff had a bunion, which was aggravated by physical activity.
ARNP Baum was also aware, based on self-reports by the Plaintiff, and from the
activity reports prepared by corrections staff, that Plaintiff was physically active
and played handball despite her advice that he avoid physical activity.[3]  ARNP

---

[3]  It should be noted that in his statement of disputed facts, Plaintiff denies making
any statements to ARNP Baum regarding participating in physical activities,
including handball. *See* Plaintiff's Statement of Disputed Facts, No.34, Ct. Rec. 67
at p. 49.  The Court finds these to be conclusory denials that are not sufficient to
create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at
250.  Under Fed. R. Evid. 803(4), statements made for purposes of medical
diagnosis or treatment and describing medical history, or past or present
symptoms, pain, or sensations, are admissible as evidence under an exception to
the hearsay rule. The rationale for the medical-treatment exception is that because
diagnosis or treatment will depend in part on what the patient says, the court is
willing to assume that a patient seeking medical help will speak truthfully to
medical personnel.  Consequently, in this case, the properly authenticated medical

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18**

Baum was also aware that Plaintiff had been seen by a podiatrist at McNeil Island Corrections Center, who had recommended consideration of orthotics at a future visit.  There is no evidence in the record that indicates that ARNP Baum was aware of any facts that would lead her to infer that Plaintiff's bunion posed a substantial risk of serious harm.

Nor does the record contain any facts indicating that any actual or potential harm to Plaintiff's left foot was the result of Defendant Baum's "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.  Indeed, the evidence demonstrates just the opposite: that ARNP Baum responded in a timely manner to Plaintiff's requests for medical appointments.  The record indicates that in an eight month period of time, ARNP Baum interacted with Plaintiff on at least seven occasions regarding his bunion and foot pain.  The record contains copies of twelve "kites" sent by Plaintiff to ARNP Baum complaining of foot pain.  While the record contains no indication that ARNP Baum actually received each of these kites, it does indicate that she responded to all but one of them.  The record also indicates that the longest period of time that elapsed

records that were created contemporaneously to Plaintiff's encounters with medical personnel are established as fact.

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19**

between when Plaintiff requested an appointment with ARNP Baum and when Plaintiff was seen by ARNP Baum was nine days.

During the eight months that Plaintiff was under her care, Defendant Baum treated his bunion with pain-relieving medications; she discussed self-care, and ordered cross-trainer insoles, extra-wide LSI shoes, and special wide-box New Balance shoes for Plaintiff. The first time that ARNP Baum met with Plaintiff, she requested a podiatry referral from Dr. Kurshid, the physician at SCCC. While the fact that Dr. Kurshid deferred, and ultimately denied, ARNP Baum's request for a podiatry referral for the Plaintiff may conceivably be viewed as negligence, this does not reflect upon the actions or inaction of ARNP Baum, nor does it give rise to a violation of Plaintiff's Eighth Amendment rights. *Estelle,* 429 U.S. at 106. Nothing in the record demonstrates that any delay Plaintiff experienced in receiving his wide-box shoes was due to any action or inaction on the part of ARNP Baum. ARNP Baum reasonably responded to Plaintiff to the extent she could. Although Plaintiff contends that proper treatment of his bunion would have been corrective surgery, Complaint, Ct. Rec. 1 at ¶36, there is no support for this assertion in the record. In any event, differences in opinion between the medical provider and the prisoner concerning the appropriate course of treatment do not

rise to deliberate indifference to serious medical needs. *See Toguchi v. Chung,* 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Or. State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

In sum, Plaintiff has failed to establish that Defendant Baum was deliberately indifferent to his bunion.  Plaintiff's dissatisfaction with ARNP Baum's medical treatment decisions does not constitute probative evidence to prove a deliberate denial, delay, or intentional interference with medical treatment. Furthermore, the objective evidence does not create a genuine issue of fact as to whether harm resulted from ARNP Baum's claimed indifference. *See Hallett,* 296 F.3d at 745-6.  Viewing the factual evidence established by the record in the light most favorable to Plaintiff, this Court finds as a matter of law that Defendant Baum did not act with deliberate indifference to Plaintiff's serious medical needs.

### 3. Defendant Loranger

The Court finds that no material issue is in dispute as to whether Defendant Loranger was actually aware of and consciously disregarded a substantial risk of serious harm to the Plaintiff with regard to his foot condition.  During his first meeting with Plaintiff following his arrival at AHCC, PA-C Loranger was made

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 21**

aware that Plaintiff was experiencing foot pain, had a bunion, and was wearing

wide toe-box New Balance shoes, which "helps somewhat with the discomfort of

the bunion but is not entirely therapeutic." Ct. Rec. 58-8, Att. 35.  Plaintiff later

told PA-C Loranger that he experienced increased foot pain "when exercising." Ct.

Rec. 58-9, Att. 39.  PA-C Loranger believed Plaintiff's bunion to be at

approximately 30 degrees, and believed that surgical intervention was appropriate

at the 40-degree mark.[4]  Plaintiff told PA-C Loranger that he was "not really

interested in the surgical procedure [to correct the bunion], but would like the wide

toe-box shoes with orthotics."[5] Ct. Rec. 58-9, Att. 38 *(bracketed portion added)*.

PA-C Loranger was aware that Plaintiff underwent surgery to remove his

bunion on December 29, 2006. Ct. Rec. 58-11, Att. 46.  On January 11, 2007,

Plaintiff told PA-C Loranger that his post-operative foot had been stepped on while

---

[4] While there is no indication in the record as to whether this assessment is accurate or even appropriate, it speaks to the fact that PA-C Loranger did not subjectively draw the inference that Plaintiff's bunion posed an excessive risk to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837.

[5]  Plaintiff denies making this statement to PA-C Loranger. *See* Plaintiff's Statement of Disputed Facts, No. 125, Ct. Rec. 67 at p. 79. For the reasons described in fn. 3 *supra*, this conclusory denial is insufficient to create a genuine issue of fact.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 22**

he was sitting in his wheelchair. Ct. Rec. 58-12, Att. 53.  PA-C Loranger ordered

an x-ray of Plaintiff's foot, which revealed "no new abnormality." Ct. Rec. 58-12,

Att. 54.  As Plaintiff's recovery continued, PA-C Loranger initialed a note

prepared by Dr. James Porter, Plaintiff's podiatrist, in which Dr. Porter states that

"Patient reports occasional mild pain," "the patient is back in an athletic type shoe

with mild discomfort," and that the "[s]urgical site is healing satisfactorily with no

signs or symptoms consistent with infection." Ct. Rec. 58-14, Att. 65.  PA-C

Loranger was also aware that on May 12, 2007, Plaintiff was playing softball and

injured his finger trying to tag an opponent. Ct. Rec. 58-17, Att. 78.  On June 15,

2007, PA-C Loranger examined Plaintiff and noted: "On physical examination he

has no swelling in the foot.  The incisions are well-healed and benign.  He has no

signs of infection…The bunion, itself, is very nicely corrected." Ct. Rec. 58-18,

Att. 84.  In short, there is no evidence in the record that indicates that PA-C

Loranger was aware of any facts that would lead him to infer that Plaintiff's

bunion, or his recovery process subsequent to the bunionectomy, posed a

substantial risk of serious harm.

     Similarly, the record does not contain any facts that indicate that any actual

or potential harm to Plaintiff's left foot was the result of Defendant Loranger's

"intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at

104-05.  In fact, PA-C Loranger consistently responded to Plaintiff's numerous

requests for medical treatment, medical equipment, and pain medication in a timely

manner.  The assertion made in Plaintiff's complaint that PA-C Loranger refused

to afford him post-operative medical treatment is flatly contradicted by the record.

Following Plaintiff's bunionectomy on December 29, 2006, Plaintiff was seen by

Dr. Porter a total of five times in six months.  There is no indication that at any

point in time were any of Dr. Porter's recommendations disregarded by PA-C

Loranger.  Plaintiff did have one follow-up appointment with Dr. Porter scheduled

for January 19, 2007, however, this appointment was rescheduled to February 12,

2007, after Plaintiff told a nurse that he was aware he had an appointment on

January 19. Ct. Rec. 58-13, Att. 56-58.  Because an inmate who is aware of the

date and time that they are being taken out of a correctional facility for a medical

appointment could make arrangements for an escape attempt, this rescheduling of

Plaintiff's appointment served a legitimate penological interest that outweighed

Plaintiff's need for routine follow-up care. *See Clement v. Gomez*, 298 F.3d 898,

905 n.4 (9th Cir. 2002).

     Plaintiff also asserts in his complaint that PA-C Loranger "further

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 24**

exacerbated [his] medical condition and/or suffering" by "repeatedly and

consistently denied [sic] Plaintiff pain medication other than Tylenol." (Pl.

Complaint, p. 24).  This is unsupported by the record.  Following his

bunionectomy, AHCC medical records show that Plaintiff received narcotic pain

relievers, including morphine and oxycodone, and that Plaintiff continued to

receive oxycodone until February 2, 2007, more than one month after his surgery.

Ct. Rec. 58-22, Att. 102.  Plaintiff was again provided oxycodone for six days in

May, 2007. Ct. Rec. 58-22, Att. 105.  It is true that when Plaintiff complained of

foot pain on other occasions, PA-C Loranger prescribed him Tylenol

(acetaminophen/APAP).  However, a letter written by Plaintiff on May 3, 2007,

indicates that this method of pain relief was prescribed with Plaintiff's consent, if

not at his own request: "[A]ll I ask for is acetaminophen (tylenol), I do not ask for

narcotics because I believe that part of my time in prison is learn [sic] that my drug

problems helped cause my inappropriate behavior." PEL Att. I, Ex. 5.  Additional

support for the notion that PA-C Loranger's decision to treat Plaintiff's pain with

acetaminophen was not motivated by deliberate indifference is provided in a

psychiatric progress note also dated May 3, 2007, in which Dr. Mira Narkiewicz

notes: "The patient points out about his own decision about not requesting and not

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 25**

taking opiates."[6] Ct. Rec. 58-17, Att. 76.  This Court finds that PA-C Loranger's decision to treat Plaintiff's foot pain primarily with acetaminophen did not constitute an "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.

Following Plaintiff's bunionectomy, his complaints to PA-C Loranger were not primarily about his foot condition itself, but focused on:  1) delays in receiving custom orthotics made to fit his footwear; and 2) the fact that the Department of Corrections would provide only one pair of custom-made shoes for Plaintiff.  The record reflects that PA-C Loranger continued to provide Plaintiff with medical care during this time, and there is no indication that PA-C Loranger knew of or disregarded an excessive risk to Plaintiff's health and safety during this period.

Plaintiff was fitted for a pair of custom-made medical boots on April 6, 2007, after the swelling from his surgery had subsided. Ct. Rec. 58-15, Att. 70.

---

[6] Plaintiff testifies: "I never admitted that I had chosen not to request or take opiates. I had asked for pain management for my left foot pain but have always been refused."  Plaintiff's Statement of Disputed Facts, #258. This is unsupported by the record. On April 24, 2007 – nine days before seeing Dr. Narkiewicz – Plaintiff was issued 120 tablets of 1000 mg acetaminophen (APAP). Ct. Rec. 58-22, Att. 104.  On May 12, 2007 – nine days after seeing Dr. Narkiewicz –  Plaintiff received oxycodone for a six day period. Ct. Rec. 58-22, Att. 105.

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 26**

While these boots were being made, PA-C Loranger issued Plaintiff insoles for his

other pair of shoes. Ct. Rec. 58-16, Att. 71-72.  When Plaintiff informed PA-C

Loranger on May 22, 2007 that the custom-fitted molded inserts contained in the

custom-made medical boots he received one day earlier were "not adequate," PA-C

Loranger requested a consult with Dr. Porter for fitting of a new pair of custom

insoles. Ct. Rec. 58-18, Att. 81-82.  At that time, PA-C Loranger noted that

Plaintiff already had a pair of over-the-counter insoles and that Reissens has made

several attempts in providing footwear and insoles to accommodate this patient

with no success. Ct. Rec. 58-18, Att. 82.  When Plaintiff's complaints to PA-C

Loranger and other DOC staff shifted to not having special athletic shoes, in

addition to the custom-made boots, provided to him by DOC, PA-C Loranger

continued to try to accommodate Plaintiff.  Although there is no indication that Dr.

Porter or any other medical professional recommended that Plaintiff receive a pair

of custom-made athletic shoes, PA-C Loranger requested a consult for a second

pair of special shoes for Plaintiff on August 8, 2007. Ct. Rec. 58-19, Att. 89.  On

August 15, 2007, the AHCC Care Review Committee (CRC) denied that request

and recommended instead that Plaintiff be given Reissens orthotics. Ct. Rec. 58-

19, Att. 90; Ct. Rec. 58-20, Att. 91.  The CRC determined that the additional shoes

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 27**

were not medically necessary, and that Plaintiff could purchase his own recreational footwear. *Id*.  On that same day, August 15, 2007, PA-C Loranger requested that Riessens fit the orthotics from Dr. Porter's office to fit Plaintiff's own shoes.  The orthotics were trimmed and Plaintiff accepted them on August 17, 2007. Ct. Rec. 58-20, Att. 92.

While Plaintiff may not have received his custom-made footwear as promptly as he would have liked, and is clearly dissatisfied that DOC would only provide him with one pair of custom-made shoes, this Court can find no evidence in the record that, when viewed in the light most favorable to the Plaintiff, suggests that this was the result of Defendant Loranger's efforts to "deny, delay, or intentionally interfere with medical treatment." *Jett,* 439 F.3d at 1096.

Plaintiff has failed to establish that Defendant Loranger was deliberately indifferent to the treatment of his bunion, his post-operative recovery, or the provision of custom-made shoes and orthotics.  Plaintiff's dissatisfaction with PA-C Loranger's medical treatment decisions does not constitute probative evidence to prove a deliberate denial, delay, or intentional interference with medical treatment. Furthermore, the objective evidence does not create a genuine issue of fact as to whether harm resulted from PA-C Loranger's claimed indifference. *See Hallett,*

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 28**

296 F.3d at 745-6.  Viewing the factual evidence established by the record in the light most favorable to Plaintiff, this Court finds as a matter of law that PA-C Loranger did not act with deliberate indifference to Plaintiff's serious medical needs.

Plaintiff is undoubtedly dissatisfied with the timeliness of the response and the treatment that he received when he requested to be seen by Defendants Baum and Loranger.  However, such feelings of dissatisfaction with the American health care system are not limited to prisoners, and do not become a constitutional violation merely because the dissatisfied person is an inmate. *See Estelle*, 429 U.S. at 106.  While this Court does not discount Plaintiff's claims that the medical treatment he received at SCCC and AHCC failed to alleviate his foot pain, it recognizes that even the best medical treatment cannot guarantee the total alleviation of pain in every circumstance.  While Defendant Baum or Defendant Loranger might have been aware that Plaintiff's foot pain may not have been completely relieved by the medical treatment he received at SCCC and AHCC, such knowledge does not rise to the level of "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.

Because this Court has determined as a matter of law that Defendants Baum

and Loranger were not deliberately indifferent to Plaintiff's serious medical needs,

it is unnecessary to resolve Defendants' further argument that they are entitled to

qualified immunity with regard to Plaintiff's claims for damages.

### D. Section 1983 Claim Against Defendant Isles

Plaintiff alleges that Defendant Isles "interfered" with his access to medical

care because he responded to a kite directed at PA-C Loranger.  Complaint, Ct.

Rec. 1 at ¶86.  In this kite, dated February 19, 2007, Plaintiff asked PA-C Loranger

to have his medical shoes re-fitted. Ct. Rec. 55-2, Att. A.  On February 22, 2007,

LPN Isles was working in the medical clinic assisting the nursing staff with triage

of offender kites. Ct. Rec. 55, ¶9.  Plaintiff had an appointment scheduled for

February 22, and did not show up for it. Ct. Rec. 55-4, Att. C.  Because of this,

LPN Isles wrote as a response, "Not seen—No show." Ct. Rec. 55, ¶11.  Although

this response is difficult to read, it cannot be construed as a denial or interference

with Plaintiff's medical care because Plaintiff had already failed to show up for the

appointment at the time the kite was answered, and Plaintiff was able to reschedule

the appointment as needed. Ct. Rec. 55-4, Att. C.  Even assuming, *arguendo*, that

LPN Isles' action constituted a denial or interference with Plaintiff's medical care,

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 30**

such behavior would constitute an isolated occurrence of neglect insufficient to create a finding of deliberate indifference to Plaintiff's serious medical needs. *See Jett*, 439 F.3d at 1096; *McGuckin*, 974 F.2d at 1060; and *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Viewing the factual evidence established by record in the light most favorable to Plaintiff, this Court finds as a matter of law that Defendant Isles did not act with deliberate indifference to Plaintiff's serious medical needs.

### E. Section 1983 Claims Against Defendants Miller-Stout, Bergroos, Robert "Rusty" Smith, and F. John Smith

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). Plaintiff contends that Defendants Miller-Stout, Bergroos, and Robert "Rusty" Smith failed to adequately investigate the medical grievance appeals filed by Plaintiff. Complaint, Ct. Rec. 1 at ¶¶72, 85. However, prisoners have no constitutional right to a prison grievance procedure, and the failure of prison officials to respond as Plaintiff wishes to his grievance does not violate the Constitution. *See Ramirez v. Galoza,* 334 F.3d 850, 860 (9th Cir. 2003),

*cert. denied*, 541 U.S. 1063 (2004); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988).  The Defendants' alleged failure to thoroughly investigate Plaintiff's grievances, even if proven true, creates no actionable § 1983 claim.

Plaintiff also alleges that Superintendent Miller-Stout "lied to plaintiff's family in order to conceal the malfeasance of plaintiff's medical care and treatment." Complaint at Ct. Rec. 1, ¶ 83.  This allegation is contradicted by the record, which indicates that this letter simply informed Plaintiff's mother that if she had any concerns about Plaintiff's medical care, she should call the Health Care Manager at AHCC rather than calling the contracted offsite medical providers directly, as such calls may cause AHCC to lose their contracted specialists. Ct. Rec. 54-3, Att. B.  Even assuming, *arguendo*, that Superintendent Miller-Stout "lied to Plaintiff's family," such action would not create an actionable § 1983 claim, because no constitutional right of the Plaintiff would have been violated.

Plaintiff's only other allegation against Defendants Bergroos, Robert "Rusty" Smith, and the only allegation he makes against Dr. F. John Smith, is that as AHCC medical management they failed to establish and follow effective procedures and policies. *See* Complaint at Ct. Rec. 1, ¶¶88-89.  Likewise, Plaintiff

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 32**

alleges that Superintendent Miller-Stout "failed to supervise her subordinates in the disbursement of medical services." Complaint at Ct. Rec. 1, ¶94.  Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Because this Court has decided that, as a matter of law, the medical treatment that Plaintiff received for his foot condition while incarcerated at AHCC did not violate his Eighth Amendment rights, Plaintiff has no § 1983 claim against Defendants Miller-Stout, Bergroos, Robert "Rusty" Smith, or F. John Smith.

Viewing the factual evidence established by record in the light most favorable to Plaintiff, this Court finds as a matter of law that Defendants Miller-Stout, Bergroos, Robert "Rusty" Smith, and F. John Smith did not act with deliberate indifference to Plaintiff's serious medical needs.  Accordingly, it is unnecessary to consider Defendants' further argument that they are entitled to qualified immunity with regard to Plaintiff's claims for damages.

**F.  Conspiracy Claim Against Defendants**

Plaintiff alleges that the actions of the Defendants "constitute a conspiracy to perpetuate the callous and malicious disregard of the Plaintiff's [c]onstitutional [r]ights." Complaint at Ct. Rec. 1, ¶113.  This claim fails because, for the reasons explained above, there was no violation of Plaintiff's constitutional rights by the Defendants.  *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999)(en banc).

**IV. CONCLUSION**

There are no genuine issues of material fact to preclude this Court from ruling as a matter of law that Plaintiff's Eighth Amendment rights were not violated by any of the named Defendants.  Accordingly,

**IT IS ORDERED:**

1) Defendants' Motion for Summary Judgment (Ct. Rec. 48) is **GRANTED** and the Defendants are granted judgment on the Eighth Amendment claims asserted against them by Plaintiff**.**

2) Defendants' Motion to Suppress Depositions (Ct. Rec. 69) is **DISMISSED** as moot.  Even considering the deposition transcripts supplied by

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 34**

Plaintiff to be accurate, the information contained therein does not create a genuine issue of material fact that any of the named Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

The District Executive shall enter judgment accordingly, provide copies of the judgment and this order to Plaintiff and to counsel for Defendants, and close the case file.

**DATED** this  31st  day of July, 2009.


**s/ Lonny R. Suko**

_____

LONNY R. SUKO

Chief United States District Judge

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 35**